Case No. 13-7194, Daniel A. Virtue for himself and a class of seniorly situated persons appellate v. International Brotherhood of Timsters Retirement and Family Protection Plan et al. Mr. Seamill for the appellant, Mr. Cohn for the appellee. I wasn't here last night, just to make sure. Not a great mistake. Mr. Seamill. Mr. Seamill. Mr. Seamill. Good morning. Unless there are questions, allow me to begin. There are three arguments I will address. And these are, first, why adherence to this court's precedent in Coste v. Lewis requires reversal of the lower court's decision. Second, why the clear repudiation doctrine was wrongly applied by the lower court as a matter of law. And third, why the notices that the district court relied upon to find clear repudiation were not sufficient. Before I proceed further, there are two points I do want to make. First, clear repudiation is a statute of limitations argument on which the defendants have the burden of proof. They must show that all material facts were made known to the participant before being able to rely on that defense. As this court said in a case in which Judge Garland was part of the panel, White v. Etna, 210-3-412, a plan cannot fail to communicate material information and hope to invoke clear repudiation to prevent a full and fair review of the participant's claim. That did not occur here. So the 2006 letter wasn't a clear communication? One has to distinguish between the communication that they didn't have you in the pension plan from the communication that in 2001, November 2001, the plan adopted an amendment retrospectively effective that was barring, supposedly barring, his eligibility to participate in the plan. You're transforming the requirement of notice that you lose. You don't have the right you claim to have with notice of all the nuances to what led to that outcome. But I don't see that in the case law. I believe it was part of our argument, and I believe it is part of the law of clear repudiation that you have to have all material facts. What do you say about the Rotella, the Supreme Court's opinion in Rotella? Applying a discovery or cruel rule, we have made pains to explain, requires discovery of the injury, not discovery of the other elements of the claim. Here you knew you were injured. You knew that you were not, you were a stipend employee, and that you were not entitled to the benefits. Couldn't have been clearer that you weren't entitled to the benefits, right? Your Honor, the letter certainly did not say anything about his being entitled to pension benefits and was responding to requests of what did he receive as an employee. While I understand In the deposition he says, the IBG copied me in the letter they sent, Question, saying what? Answer, I wasn't in the plan. Question, and do you agree this document states that you only receive travel accident insurance benefits? Correct. The document says that. Question, the document does not state that you receive or are eligible to receive a benefit from the family plan. Answer, correct. So is your position that he didn't know as of the date of that letter that he was not going to get the benefits? That would seem inconsistent with his deposition. Our position is that he had the letter, he saw what it said. He also had other communications that showed that there was inconsistent treatment of him as a participant of the plan. He did not pursue it at that time. Because this had to do with whether his ex-wife would get the benefits, is that why he didn't pursue it? Not in the record, and in fact his wife, and I believe this is in the record, received benefits from two or three other different retirement programs he had been in over the course of his career. But what case can you point us to that says even if you were on notice of your injury, if you had other communications that suggested that perhaps you're not being injured, you have to wait until there's some sort of conclusive evidence that you really are injured? Do you see what I'm saying? Well, one, you had a period where the question of when you had to step forward was not always clear, because there were a line of cases at a time that you apply for your pension and you didn't have an opportunity to really challenge it beforehand. Now, I know there's statutory authority that says you can at some point go in for declaratory rights, but that didn't happen here. Second, the cases that specifically answer your question, Romer in the Seventh Circuit, which is cited in our brief, talks about having clear knowledge of the particular facts on which you're being excluded. Similarly, in the Third Circuit, you have Romero and Miller reaching that point. But understand that we have two arguments going here. One is – Actually, I mean, in Miller, it's the failure to receive a payment calculated as he calculated it to be. There's no more detail than that, right? Correct, but I think in so far as – That was enough, that was enough. But in so far as the discussion went of whether there was clear repudiation, Miller discusses Romero again that the particular facts need to be explained, particularly whereas here – Well, but let's look at Miller itself, which, as you say, rightly interprets Romero, and it is, pure and simple, the dollar number of the benefit payment that he gets. There's a long explanation of why it's that amount, or even a short explanation of why it's that amount. Bear with me one moment, Your Honor. I agree with you as to Miller, but in the discussion of the law in Miller, they distinguish between his receiving the payment and being able to ask for the accounting of the payment, without doing away with the principle established in Romero that clear repudiation generally requires the specific information to be communicated. And I think that's an important distinction. But understand that even if your view is that he should have known in 2006, that there are several other factors at play here. One, you have a plan that says if you have an accrued benefit, no amendment can take it away. Second, you have the defendants, particularly – That's the proposition that, if correct, makes the denial of the benefits unlawful. It doesn't go to the clarity of the denial of benefits. But let me assume your argument that the 2006 letter should have told him, you better step forward and challenge this today. When he did go for the pension benefit and make the application, it is clear that the plan administrative committee told him that he had a right to be heard as a matter of right. And that was in their letter under their documents. So even if, absent that, they could rely on a legal doctrine and persuade one that the 2006 letter was enough to take a participant's pension away, or his argument for a pension away, it doesn't deal with the fact that the Teamsters, under their own rules – not the Teamsters, the plan under its own rules – said as a matter of right, you have the ability to apply. They took the application. They did a 13-month investigation of these circumstances. They realized in the course of it that they couldn't do – This is all after the statute had expired, right? Correct. Under the theory, if 2006 was the start of the clock. The latter of the two notices, yes. But even so, statute of limitations are not a part of the claim itself. It's a procedural bar to arguing for your right. That argument, under Coste, was waived. Now, we think it was also waived under clear repudiation because we think it requires giving the person enough notice of all the circumstances. We could see in the record, and you have examples of it in the joint appendix, that when asked, the Plan Administrative Committee would say, in 1998, we required 1,000 hours, and that was adopted in 1998. Very interesting. Effective 1999, stipend employees aren't covered, they didn't say, because of an amendment in 2001, which would have put the participant in a fundamentally different position to assess his rights to successfully appeal. And that's the gravamen that we're talking about here. But it seems like you're turning the discovery rule. You're changing it fundamentally from something where, okay, you're reasonably put on notice of your injury to a rule that says, if you've got an argument that you're being injured wrongfully, we have to wait and see how it gets resolved when you present that argument to the plan, and then we have to let the clock start ticking. I mean, isn't that really what your argument comes down to? I think it's different than that, because understanding that something was done retrospectively would cause a person to act differently than being told you're not in the plan. The communications from the Teamsters to others and to him. You're saying it's got to be noticed not only of the injury, but of all the vulnerabilities that the party inflicting the injury may be subject to in terms of effecting the injury. There are a couple of things here. Yes, because there's a duty to give the story and give it truthfully and correctly. And I submit to you when you say we did something in 98 and applied it in 98, and then we did something effective in 99 and not done it, but we didn't do it until 2001. It shows that they're a step too clever. But you're not saying there's anything untruthful about the statement. You don't get anything except travel expenses, period. I think it – well, in fact, he was – That's not untrue. That's not a – that was completely true. It was. That was true, but he also had a phone. The view of the fund. He also had a phone, secretary, and some other incidents of work that were incidents that a full-time employee would have, including an office here in Washington. That was all part of the record. If I might, in the short time remaining, let me make one other very important point. Because of the way the amendment worked, it breached a federal requirement, the anti-cutback rule, which had itself a very particular form of notice. And that notice, 15 days before the amendment goes into effect, has to tell people their future rights are going to accrue at a different rate, a lower rate. He was in the plan at that point. You're saying it was an unlawful repudiation, but the use of a statute of limitations defense assumes that the Defendant's Act was unlawful or could well be unlawful. I think there's core precedent that, and I believe it was in the Romero case, where when Congress and the law requires a particular form of notice, you can't argue a statute of limitations defense to get around the obligation. The action they took in the amendment, as applied at least to Mr. Virtue and the class we wanted to represent, was void ab initio. They should not be barred from doing this. Should not, and under prevailing law, we believe clearly should not. So you're saying the repudiation was not clear. I believe they also noted specifically that they rejected the statute of limitations defense where there was a failure to give the 204H notice. And that's at 404, at 212, at 225. I think to the extent they relied on that, it's repudiated in Miller. Right, but in Romero, the problem is, I'm just going to read you the holding. Accordingly, we hold that when an ERISA plan is amended, but the fact that the amendment actually affects a particular employee or group of employees cannot be known until some later event. Cause of action doesn't accrue until the employee knew. Right? But here, the employee did know. Whether or not he knew what was causing his injury, he knew that he was not eligible, even though he thought he should be eligible. Your Honor, I think the reason Congress wrote the 204H requirement and the issue of telling people was to give them awareness that rights they had were being stripped away with a recognition that that's materially different than whether or not they say you qualified or didn't qualify. I think you're being too forgiving here of an employer. It's your rule, so let me see if I understand. The rule you want is one that says if you didn't get the notice of the change, there's no statute of limitations at all until a notice is given. Is that right? Even if the employer tells you, we're not going to give you any notice. I would say it's to the earlier of when you get the notice or the time you would otherwise apply for benefits. So in an Administrative Procedure Act case where the statute says that there has to be notice of a rulemaking and the agency doesn't give notice, just issues a rule. An affected party can just wait forever on the theory that he was never given notice. Isn't the argument about notice that there's been a failure on the merits of what is required rather than a failure to create what's necessary in terms of injury to appeal? I don't pretend to be an expert on the administrative procedures. Neither do we. In the benefits area where I've worked a lot of years, I think 204H is recognized as a congressional decision that participants are to be given very specific notice so they can protect themselves. And it was to be notice of a particular form. Now, there's a lot of leeway on what 204H notices look like, no doubt about that. But a particular kind of information that experience shows will lead people to react to it differently. And the plan would say that once he had a right, it could never be taken away under the very terms of the plan. You have language that says he had to be hired effective April 199, which factually was untrue. The answer that the administrative committee gave, and I see my time's up. I'll be very quick here. The answer that they gave was, we've got your name on the list. We have to follow the list. And that was the extent of the analysis of the different legal obligations that were followed. Thank you, sir. Thank you. We'll hear from Mr. Cohen. May it please the Court, Jeffrey Cohen on behalf of the Appalese. The district court correctly found that Mr. Virtue's claim was barred by the statute of limitations. And its ruling is denying class certification on that basis and granting summary judgment on that basis should be affirmed. As the district court found, at a minimum, the 2006 notice was a clear repudiation. In addition, there was notice given in 2002 to Mr. Virtue and all the other stipend employees who were affected by the amendment. The court, having ruled that 2006 met the clear repudiation, really didn't get into whether 2002 notice also did, but he seemed to indicate, certainly in the class certification denial, that it was sufficient when he doubted that any other potential member of the repudiative class. As to that one, the only evidence was that Mr. Virtue said he probably got it or he may have got it. I take it there was no evidence that he actually received that first notice. Is that right? There's yes, but. That was the reason the district court was somewhat uncertain about you relying on that. I think that was true at the time of the class certification ruling. By the time of the summary judgment, the record had been developed through discovery, and there was evidence of a mass mailing, which one of the executive assistants of the secretary treasurer of the international said, I sent this to all the people that were on this list. And he was on that list? Yes, Your Honor. So by the time of summary judgment motion, the district court, I think, could have gotten, but felt it unnecessary. My point being that both the 2002 notice and the 2006 notice were clear, and you don't have to be an Arisa genius to understand you are not a participant in this plan because of the position that you hold. And so it's unlike, say, the Kifafi, if I've pronounced that correctly, decision versus Hilton decision where there was a very, rank and file employees could not necessarily tell that there was a violation of the backloading rules because they were receiving lesser benefits. This was very clear. You're not a participant. And as Judge Garland pointed out earlier and as the district court said, it was crystal clear in the words of the district court. The 2006 notice was crystal clear in its repudiation. So what legal effect on the statute of limitation analysis is this argument that the notice that's required by the anti-cutback rule was not sufficient? A couple of points in response to that, Your Honor. As the district court noted, if the claim is barred, it really doesn't matter. These are my words, not his. But you have to ferret out the basis of your legal claim when you're given notice, basically. With respect to the 2004H notice and the whole notion that there's a violation of the anti-cutback rule, I'd just like to point out that what the anti-cutback rule prohibits is a diminution in benefits already earned. You can't do that. That applies to participants in a plan. Here, Mr. Virtue was never a participant in the plan. That's the whole point. Furthermore, the section 2004H notice isn't a notice that says That's a merits question, isn't it? Absolutely, Your Honor. It is a merits question. Do we have to decide whether he was originally in the plan or not? I think you don't have to decide that in order to affirm. And, in fact, the district court didn't get into that. Our motion for summary judgment wasn't limited to the statute of limitations, but that was what the district court chose to address. And so, given the procedural posture, the merits are not before you. We only have the statute of limitations. Absolutely. So whether we affirm or reverse, in either case, we're not to address the merits here, right? Right. I just wanted to clarify for the court's edification, though, that the notice, the 204H notice, is, A, it's for participants, which we say he was in one, and, B, it's not to tell you that we're doing something illegal because the plan can't do that. It's to tell you that, going forward, you're going to accrue benefits at a lower rate, if that's what the notice is about, or your plan is frozen. You're not going to accrue benefits anyway. That's what a 204H notice is for. If it was illegal to take away what he had earned, he or any other participant, a 204H notice isn't going to cure that. It's not going to do some sort of magic that was absent here. The fact of the matter is our position has consistently been that he was never a participant. Therefore, no notice would be required. And also, he didn't have the protection of the anti-cutback rule because he didn't earn any benefits that could potentially be cut back. But fundamentally, on your view, that's all irrelevant. Exactly. That's exactly right. I only got into that because you were having the discussion with my friend, Mr. Virtue's counsel. I'd also just like to point out that the Coste case, reliance on that is woefully misplaced. It's a very old case, a pre-ERISA case. Why does it matter whether it's pre-ERISA or not?  Well, first of all, there were no such protections as the anti-cutback rule or even vesting. We're talking about the statute of limitations question. Why is it not so relevant? This is not an ERISA-specific statute of limitations. This is BARA. Absolutely. The reason is that unlike the situation presented here, where there was clear notice, you were not a participant. All you get is travel accident benefits as a result of this particular employment with the International Union. By contrast, in that case, Coste was a coal miner that was covered by the Mine Workers Plan. In fact, he had met all the conditions for eligibility for a pension, except that he hadn't retired and applied. The trustees, as they were permitted to do pre-ERISA, changed the rules. And as this court said, essentially divested him of a right he'd already earned, and they didn't even give him notice that they were changing the rules. All he had to do was retire and apply, and he could have been eligible for the pension under the old rule. In addition to those basic differences, the trustees were nevertheless still considering his application, whether he was eligible under both the old rule and the new rule, immediately before the litigation. I think those are easily distinguishable from this situation, where the plan and the employer consistently said, you are not a participant in this plan. And so I think the cost of all... Your basic argument is that there the repudiation was not clear. Is that right? It was not clear, and also it was the continuousness of the... I mean, certainly... Well, we have an argument like that here, in that after the statute had run, if it has run, the fund opened up the doors to listening to his complaints. Well, Your Honor, they only listened to his complaints about whether he was a participant, not whether he was entitled to benefits. And even on that point, they continued to adhere to their prior position that he was not a participant. And there was some elaboration on why, but I mean, it's not really for... It's for the courts to say the statute of limitations bars your claim, not for plan administrators to say the statute of limitations bars your claim. There's a right to full review, full and fair review under ERISA. They gave him that right. Arguably, they had no choice but to give him that right. And if they hadn't, I think would have been subject to criticism for not giving him the opportunity to show that he was a participant. They gave him that opportunity. He was unable to demonstrate that he was, that he met the old rule. So I don't think that the fact that they gave him a full and fair opportunity to show why he was a participant, which is what the review was limited to, takes away from either the clarity or the continuousness of the repudiation. Thank you. Unless the court has any further questions, we rest on our brief. Okay. Thank you. There you are. Let's see if we have any more time. We'll give you another minute. Thank you, Your Honor. Very quickly, then I'll cover four items. First, on his eligibility and whether he met it initially. The district court found it, Joint Appendix 505, you'll see the page of the order, that he arguably worked the 1,000 hours he needed to establish eligibility. He started October 1, 2000. That would have been before October 1, 2001. The amendment came November 2001. He would have met the 12-month to 1,000-hour standard. Second, in Miller, because the court addressed it, in page 522, 523 of that opinion, I think when you read the court's statement, our application of the clear repudiation rule is consistent with broad beneficiary protective goals of ERISA. We noted in Romero that ERISA does not require plan participants and beneficiaries likely unfamiliar with the intricacies of pension plan formulas and technical requirements of ERISA to become watchdogs over potential plan errors and abuses. But this concern is not implicated here. Miller does not complain about the notice provided to him of his rights. So when you get back to the issue of rights, the standard is different, and as applied here we think means clear repudiation standards were not met. Can I ask you a question for my personal edification? You began with a citation to an opinion you said was mine. Is that White v. Aetna? Yes, White v. Aetna. So that's not cited in the briefs. So let me just say for the benefit of the law students who are here, this is why we have law clerks. So my law clerk just looked this up on Westlaw, and he reports that this is about a 60-day administrative appeal rule. Is that within the pension plan? No, no, it was dealing with a health plan, I believe, in White v. Aetna. But it's not a statute of limitations. It's a plan provision? Oh, by the way, it's a Tatel opinion, not a Garland opinion, which explains why I don't know. I'm sorry. I thought it printed out with your name on it, and I apologize. It's all right. I'm on the panel, just not the writer. I mean, you began with an argument, which seemed pretty persuasive to me, that Judge Garland has previously held that until notice occurs, the statute of limitations doesn't begin to run. You get some ownership. It was a unanimous opinion. No, no, I'll take the ownership. The question is whether it's about statute of limitations. That's all. Your Honor, I'd have to look at it. We'll all look at it afterwards. Fair enough. Go ahead. Kifava was another case that the counsel mentioned. I think when you read it at page 729, you'll find Kifava is more helpful to us than it is to them. The Court writes, this Court writes, but the requirement that the repudiation be clear and made known to the plan beneficiaries is not an idle one. Whether repudiation may trigger limitations, period, depends on what the prospective plaintiff should have understood from the miscalculated benefit payments. So there, even though they had been receiving their benefits, which was like the Miller case, limitations was not applied against them. Finally, as to Coste, I think the Court realizes, it is a federal common law principle. Federal common law decides when does a claim accrue. And clearly, they're continuing to investigate, and not just as a courtesy, but a real investigation is a matter of right waves and limitations. So the limitations argument precludes the clock from starting any earlier than the decision, which I think was in either very late 2011 or 2012. Thank you for your attention. Thank you. We'll take the matter under submission. Please give us recess. Stand, please. Thank you. Thank you. Thank you. Thank you. I didn't get any water. Where's the water, boy? Well, you disappeared, too. Where's the water, boy? I guess she missed the last bunch of water. It feels like it's warm up here. It is. It's cold in here. So, unfortunately, there's going to be more than there was going the other direction. Now he has the stuff that he took home last night. Okay. I'm going to put myself in the closet here. Okay. Great. Okay. And, unfortunately, this is also his. Oh, great. Okay. Okay. Cool. All right. And you can just leave the stuff in here and come back. Okay. Because that's exactly what I'm going to be doing. Okay. All right.    Okay. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. I'm going to take the judges up. Okay. Tracy,
judges: Garland, Wilkins, Williams